[Cite as *G & K Mgt. Servs., Inc. v. Owners Ins. Co.*, 2014-Ohio-5497.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| G & K MANAGEMENT SERVICES, INC., ET AL. | : | JUDGES: |
| | : | |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiffs-Appellants | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 14-CA-33 |
| | : | |
| OWNERS INSURANCE COMPANY | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Fairfield County Court
of Common Pleas, Case No. 2012 CV
1134

JUDGMENT:                     AFFIRMED

DATE OF JUDGMENT ENTRY:       December 11, 2014

APPEARANCES:

For Plaintiffs-Appellants:              For Defendant-Appellee:

THOMAS J. MULVEY                        SHAWN W. MAESTLE
Curry, Roby & Mulvey Co., LLC           JOHN G. FARNAN
30 Northwoods Blvd., Suite 300          MARTHA ALLEE
Columbus, OH 43235                      Weston Hurd, LLP
                                        The Tower at Erieview
                                        1301 E. 9th St., Suite 1900
                                        Cleveland, OH 44114

*Delaney, J.*

{¶1} Plaintiffs-Appellants Guy Schiavone and G&K Management Services, Inc. appeal the April 14, 2014 judgment entry of the Fairfield County Court of Common Pleas.

**FACTS AND PROCEDURAL HISTORY**

{¶2} Plaintiff-Appellant Guy Schiavone is the president of Plaintiff-Appellant G&K Management Services, Inc. G&K is a franchisor of the Fred Astaire Dance System for the State of Ohio. In 1990, G&K granted a Fred Astaire franchise to Christopher Cloud. Cloud operated his dance studio in Lancaster, Ohio under the name, "In Time LLC."

{¶3} On December 29, 2010, Peggy and Rick Lavinsky filed a complaint in the Fairfield County Court of Common Pleas. The complaint named Fred Astaire Dance Studios, Inc., Fred Astaire Dance of North America, Inc., Megadance USA Corp., G&K, Can-Am Championships, Inc., Schiavone, Christopher Cloud, and In Time LLC as defendants. The complaint alleged Peggy and Rick Lavinsky took ballroom dancing lessons at Cloud's dance studio. Peggy Lavinsky enrolled in additional ballroom dance lessons with Cloud. Over a three-year period, Peggy Lavinsky signed multiple student enrollment agreements and Cloud accepted pre-payment of over $500,000 for dance lessons, practice sessions, coaching, competitions, dance camps, individual entries, and solo performances. On July 2, 2010, Cloud closed the dance studio without any notice to his students.

{¶4} The complaint alleged fourteen causes of action. As against all defendants, the Lavinskys alleged a violation of the Ohio Consumer Sales Practices

Act, fraud, negligent misrepresentation, violation of Ohio's Pattern of Corrupt Activity Statute, civil conspiracy, and negligent infliction of emotional distress. Against G&K and Schiavone, the Lavinskys alleged respondeat superior. The Lavinskys brought claims for breach of contract, judgment on cognovit note, invasion of privacy, intentional infliction of emotional distress, breach of contract, unjust enrichment, and promissory estoppel against Cloud and In Time LLC.

{¶5} From December 5, 2009 through December 5, 2010, G&K and Schiavone were the named insureds under a commercial general liability ("CGL") policy issued by Defendant-Appellee Auto-Owners Insurance Company under policy no. 004603-05621846-09. Auto-Owners also insured In Time LLC under a commercial general liability policy no. 084603-5519802 where G&K and Schiavone were named as additional insureds.

{¶6} Upon receipt of the summons and complaint, Schiavone notified his insurance agent of the suit. G&K and Schiavone were informed no coverage was available under the commercial general liability policies.

{¶7} G&K and Schiavone filed a declaratory judgment action against Auto-Owners in the Fairfield County Court of Common Pleas. The complaint alleged Auto-Owners owed a duty to defend under the G&K and In Time LLC commercial general liability policies, as well as raised claims for breach of contract and bad faith.

{¶8} G&K and Schiavone filed a motion for partial summary judgment on their claim for declaratory judgment on the issue of duty to defend. Auto-Owners filed a motion for summary judgment against G&K, Schiavone, Cloud, and In Time LLC. Megadance USA filed a motion for summary judgment on the issue of duty to defend.

{¶9} On March 24, 2014, the trial court ruled on the pending motions for summary judgment. The trial court determined there was no genuine issue of material fact that Auto-Owners did not owe G&K or Schiavone a duty to defend under the terms of the commercial general liability policies. The judgment was finalized on April 14, 2014.

{¶10} It is from this decision G&K and Schiavone now appeal. In this Opinion, G&K and Schiavone will be referred to a "G&K" for ease of discussion.

## ASSIGNMENTS OF ERROR

{¶11} G&K raises two Assignments of Error:

{¶12} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO GRANT PARTIAL SUMMARY JUDGMENT TO APPELLANTS AND FAILING TO DECLARE THAT AUTO OWNERS INSURANCE COMPANY HAD A DUTY TO DEFEND CLAIMS ASSERTED IN FAIRFIELD COUNTY COMMON PLEAS CASE NUMBER 10 CV 1584.

{¶13} "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING AUTO OWNERS INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND DECLARING THAT THE CLAIMS ASSERTED IN FAIRFIELD COUNTY COMMON PLEAS CASE NUMBER 10 CV 1584 DO NO TRIGGER ANY COVERAGE UNDER INSURANCE POLICIES ISSUED BY AUTO OWNERS INSURANCE COMPANY."

## ANALYSIS

{¶14} G&K argues in its first and second Assignments of Error that the trial court erred in denying its motion for summary judgment and granting summary judgment in favor of Auto-Owners. We disagree.

## Standard of Review

{¶15} We refer to Civ.R. 56(C) in reviewing a motion for summary judgment which provides, in pertinent part:

> Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.* * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶16} The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court, which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt,* 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). The nonmoving party then has a reciprocal burden of specificity and cannot

rest on the allegations or denials in the pleadings, but must set forth "specific facts" by the means listed in Civ.R. 56(C) showing that a "triable issue of fact" exists. *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801 (1988).

{¶17} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (1997), citing *Dresher v. Burt,* 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

**General Insurance Principles**

{¶18} As established by the Ohio Supreme Court, an insurance company has the duty to defend an action against an insured when the "scope of the allegations of the complaint * * * brings the action within the coverage of the policy." *City of Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 459 N.E.2d 55, 557 (1984). "The scope of the allegations in the complaint against the insured determines whether an insurance company has a duty to defend the insured. The insurer must defend the insured in an action when the allegations state a claim that potentially or arguably falls within the liability insurance coverage. However, an insurer need not defend any action or claims within the complaint when all the claims are clearly and indisputably outside the contracted coverage." (Citations omitted.) *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 115, ¶ 19. An insurer need not provide a defense "if there is no set of facts alleged in the complaint which, if proven true, would invoke coverage." *Cincinnati Indemn. Co. v. Martin*, 85 Ohio St.3d 604, 710 N.E.2d 677, 678 (1999).

{¶19} An insurance policy is a contract between the insurer and the insured. *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 112 Ohio St.3d 482, 2006-Ohio-6551, 861 N.E.2d 121, ¶ 23. Whether a claim is covered under the terms of the insurance policy, it is a question of law for the court to decide. Generally, courts interpret insurance policies in accordance with the same rules applied in interpreting other types of contracts. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.,* 64 Ohio St.3d 657, 665, 597 N.E.2d 1096 (1992). To interpret a provision in the policy, the court must look to the policy language and rely on the plain and ordinary meaning of the words used to ascertain the intent of the parties to the contract. *Penn Traffic Co. v. AIU Ins. Co.*, 99 Ohio St.3d 227, 2003-Ohio-3373, 790 N.E.2d 1199, ¶ 9; *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 115 Ohio St.3d 306, 2007-Ohio-4917, 875 N.E.2d 31, ¶ 7.

**Auto-Owners Commercial General Liability Policy Language**

{¶20} Auto-Owners argues it has no duty to defend against the claims in the Lavinskys' lawsuit based on the terms of the G&K and In Time LLC CGL policies. G&K and Schiavone are named as additional insureds under the In Time LLC CGL policy. The G&K CGL policy and the In Time LLC CGL policy contain the same relevant policy language. Pertinent to this appeal, the policy language of the CGL policy is as follows:

SECTION I -- COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and

duty to defend the insured against any "suit" seeking those damages. We may at our discretion investigate any claim or "occurrence" and settle any claim or "suit" that may result. * * *

* * *

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

* * *

(3) Prior to the policy period, no insured listed under Paragraph 1 of Section II -- Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. * * *

* * *

2. Exclusions

This insurance does not apply to:

* * *

o. Personal Injury and Advertising Injury

"Bodily injury" arising out of "personal injury" or "advertising injury."

COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may at our discretion investigate any claim or offense and settle any claim or "suit" that may result. * * *

* * *

SECTION V -- DEFINITIONS

* * *

4. "Bodily injury" means bodily injury, bodily sickness or bodily disease sustained by a person, including death resulting from any of these at any time.

* * *

14. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

18. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

{¶21} The Auto-Owners' policy issued to G&K contains a CGL Plus Endorsement which amends the CGL coverage form's definition of "personal injury" and replaces it with the following:

5. PERSONAL INJURY EXTENSION

* * *

15. "Personal Injury" means, other than "bodily injury", arising out of one or more of the following offenses:

> a. False arrest, detention or imprisonment;
>
> b. Malicious prosecution;
>
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;
>
> d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> e. Oral or written publication of material that violates a person's right of privacy; or
>
> f. Discrimination, humiliation, sexual harassment and any violation of civil rights caused by such discrimination, humiliation or sexual harassment.

**Does Auto-Owners owe G&K a Duty to Defend Pursuant to the CGL Policy?**

<u>Emotional Distress</u>

{¶22} G&K argues that pursuant to the allegations of the Lavinskys' complaint, Auto-Owners owes G&K a duty to defend against those allegations. G&K argues the various claims made in the Lavinskys' complaint are arguably within the scope of policy coverage for "personal injury." In Count VI of the Lavinskys' complaint, the complaint alleges a claim of the negligent infliction of emotional distress by all defendants. Count VI states:

> 174. All Defendants were negligent in their conduct towards Mrs. Lavinsky by violating the 1989 FTC Order which established for the second time that Fred Astaire Dance Studios were involved in the pervasive deceptive practices designed to lure and cheat customers.

> 175. Mrs. Lavinsky suffered serious emotional distress as a direct result of the negligence of Mr. Cloud in his direct actions and the remaining Defendants in their lack of oversight of Mr. Cloud.

> 176. All of the Defendants could reasonably forsee that Mrs. Lavinsky or any similarly situated elderly woman with a love of ballroom dance would suffer emotional distress to have her own trusted, long-time dance partner and instructor cheat her out of her precious and limited time and money.

{¶23} The G&K CGL policy provides coverage for claims based on "personal injury." The policy states, "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies." The CGL policy defines "personal injury" as:

        a. False arrest, detention or imprisonment;

        b. Malicious prosecution;

        c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

        d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

        e. Oral or written publication of material that violates a person's right of privacy; or

        f. Discrimination, humiliation, sexual harassment and any violation of civil rights caused by such discrimination, humiliation or sexual harassment.

{¶24} In support of its argument that Auto-Owners owes G&K a duty to defend based on the Lavinskys' claim of negligent infliction of emotional distress, G&K relies upon the decision in *Granger v. Auto Owners Ins.*, 2013-Ohio-2792, 991 N.E.2d 1254 (9th Dist.) *discretionary appeal accepted*, 137 Ohio St.3d 1440, 2013-Ohio-5678, 999 N.E.2d 695. In *Granger*, the Ninth District Court of Appeals considered a declaratory judgment action brought by an insured against his insurance provider, Auto-Owners. The insured was named in a complaint alleging federal and state fair housing claims premised on discrimination based on familial status and race. The insured notified Auto-Owners, his insurance provider, that he had been accused of discrimination but was told that the dwelling policy definition of personal injury in his umbrella policy did not include

discrimination. *Id.* at ¶ 3. The insured settled the federal case and brought a declaratory judgment action against Auto-Owners alleging breach of contract and estoppel for Auto-Owners' refusal to provide coverage and a defense in the federal suit. *Id.* at ¶ 4.

{¶25} The complaint in the federal suit alleged a claim for emotional distress due to the alleged pre-leasing discrimination. The insured argued emotional distress was a claim covered under the umbrella policy issued by Auto-Owners to the insured based on the umbrella policy's definition of "personal injury:"

(a) bodily injury, sickness, disease, disability or shock;

(b) mental anguish or mental injury

(c) false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution or humiliation; and

(d) libel, slander, defamation of character or invasion of rights of privacy; including resulting death, sustained by any person.

*Id.* at ¶ 12.

{¶26} The Ninth District Court of Appeals determined the umbrella policy provided coverage pursuant to the definition of "personal injury" and the complaint's claim for emotional distress. It held:

As is evident from the above language, Auto–Owners defined personal injury both in terms of certain claims, such as malicious prosecution, and in terms of resulting harms, such as humiliation or mental anguish. * * * because Ms. Kozera claimed in her complaint that she suffered emotional distress, she arguably suffered humiliation, which is a personal injury covered under the policy. We agree. Emotional distress has been defined

as "[a] highly unpleasant mental reaction (such as anguish, grief, fright, *humiliation*, or fury) that results from another person's conduct[.]" (Emphasis added.) *Black's Law Dictionary* 563 (8th Ed. 2004). Thus, it would appear that the federal complaint alleges a personal injury as contemplated by the umbrella policy.

*Id.* at ¶ 13, 14.

{¶27} G&K argues the logic of *Granger* applies to the present case. First, the Lavinskys' complaint alleges a claim of negligent infliction of emotional distress similar to that in the underlying complaint in *Granger*. Second, G&K states that its CGL policy with Auto-Owners uses the word "humiliation" in the definition of "personal injury" as did the policy language in *Granger*. Therefore, G&K argues the Lavinskys' complaint alleges a personal injury as contemplated by the CGL policy.

{¶28} When interpreting an insurance contract, we look to the plain and ordinary language of the contract to determine the intent of the parties. We compare the language of the *Granger* umbrella policy to the language of the CGL policy in the present case and we find that we must disagree with G&K's conclusion that emotional distress is contemplated with the definition of "personal injury" in the CGL policy.

{¶29} Relevant to G&K's argument, the CGL policy defines "personal injury:"

"Personal Injury" means, other than "bodily injury", arising out of one or more of the following offenses:

* * *

f. Discrimination, humiliation, sexual harassment, and any violation of civil rights caused by such discrimination, humiliation or sexual harassment.

{¶30} We find the *Granger* policy language and the CGL policy language differently employ the word "humiliation" within the definition of "personal injury." In the *Granger* policy, the Ninth District found the *Granger* insurance policy defined "personal injury" both in the terms of certain claims, such as malicious prosecution, and resulting harms, such as humiliation or mental anguish. The CGL policy in the present case, however, states that a personal injury is the *offense* of discrimination, humiliation, sexual harassment and any violation of civil rights caused by such discrimination, humiliation, or sexual harassment. "Offense" is not defined by the CGL policy but the dictionary definition of "offense" is "a breach of moral or social conduct" or "an infraction of law." *Webster's Third New International Dictionary* (1993). The CGL policy lists the offenses of discrimination, humiliation, and sexual harassment in conjunction with a violation of civil rights. Humiliation under the CGL policy is not a resulting harm as found in the *Granger* policy, but a breach of conduct or an infraction. A review of the Lavinskys' complaint shows there is no mention of a breach of conduct or infraction of humiliation or a violation of the Lavinskys' civil rights caused by humiliation. The Lavinskys' complaint alleges emotional distress that, as the *Granger* court held and is now on appeal before the Ohio Supreme Court, may include a mental reaction of humiliation. Because of the difference in the definition of "personal injury" in the *Granger* and the CGL policy, we find the holding of the *Granger* case to be inapplicable to the facts of the present case.

{¶31} G&K also argues in Count I of the Lavinskys' complaint, the Lavinskys allege a violation of the Ohio Consumer Sales Practices Act against all defendants. The Lavinskys claimed economic and noneconomic damages based on the violations of the

CSPA. The Ohio Supreme Court held that noneconomic damages can be included in awards of actual damages under the CSPA. *Whitaker v. M.T. Automotive, Inc.*, 110 Ohio St.3d 177, 2006-Ohio-5481, 855 N.E.2d 825, ¶ 20. Noneconomic damages could include emotional distress. *Id.* at ¶ 31. G&K argues therefore, the "personal injury" language that includes "humiliation" would provide coverage under the Lavinskys' claim for a violation of the CSPA. Based on our determination as to the definition of "personal injury", we disagree with G&K's argument.

### Count VII -- Respondeat Superior

{¶32} Count VII of the Lavinskys' complaint alleges under the theory of respondeat superior, G&K is liable for Counts I through VI against Cloud. In the underlying motions for summary judgment, G&K conceded no coverage under the CGL policy was available for Counts II, III, IV, and V of the Lavinskys' complaint. In Count IX of the Lavinskys' complaint, the Lavinskys alleged a claim of intentional infliction of emotional distress by Cloud. Paragraph 226 of the Lavinskys' complaint stated Cloud's actions proximately caused psychic and/or physical injury to Mrs. Lavinsky.

{¶33} We find the theory of respondeat superior does not extend coverage to G&K under the CGL policy. First, we have determined there is no coverage under Counts I and VI of the Lavinskys' complaint because the claims do not fall within the definition of a "personal injury" as argued by G&K. Second, the Lavinskys' complaint alleges respondeat superior for Counts I through VI. G&K conceded the CGL policy did not provide coverage for Counts II through V. Third, the Lavinskys' complaint contemplates physical injury to Mrs. Lavinsky in Count IX, which is outside of the claim for respondeat superior.

**CONCLUSION**

{¶34} An insurer need not provide a defense to an insured against a cause of action if there is no set of facts alleged in the complaint which, if proven true, would invoke coverage. In order to make that determination, we must consider the scope of the allegations in the underlying complaint and the plain language of the insurance contract. Considering the insurance language and the Civ.R. 56 evidence in a light most favorable to the non-moving parties, we find that reasonable minds could only conclude there are no genuine issues of material fact there is no coverage under the G&K or In Time LLC commercial general liability policies for the claims raised in the Lavinskys' complaint. Accordingly, Auto-Owners does not owe G&K a duty to defend against the claims in the Lavinskys' complaint.

{¶35} The first and second Assignments of Error of the G&K and Schiavone are overruled.

{¶36} The judgment of the Fairfield County Court of Common Pleas is affirmed.

By: Delaney, J.,

and Baldwin, J., concur.

Hoffman, P J., dissents.

*Hoffman, P.J., dissenting*

{¶37}  I respectfully, dissent from the majority opinion.

{¶38}  The policy at issue defines "Bodily injury" as "bodily injury, bodily sickness or bodily disease…". I find a claim for emotional distress constitutes a claim for bodily injury for the reason set forth in my dissent in *Hawthorne v. Migoni*, 5th Dist. App. No. 2003AP0054, 2004-Ohio-378.  See also Judge Tyack's dissent in *Bernard v. Cordle* (1996), 116 Ohio App. 3d 116.

_____
HON. WILLIAM B. HOFFMAN