[Cite as *Steinborn v. Farmers Ins. of Columbus, Inc.*, 2019-Ohio-1745.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CHRISTOPHER E. STEINBORN | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 2018CA00128 |
| | : | |
| FARMERS INSURANCE OF | : | |
| COLUMBUS, INC., ET AL. | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Canton Municipal
                            Court, Case No. 2017 CVE 5443



JUDGMENT:                   AFFIRMED



DATE OF JUDGMENT ENTRY:     May 6, 2019

APPEARANCES:

For Plaintiff-Appellant:                 For Defendants-Appellees:

TZANGAS PLAKAS MANNOS LTD.               LAW OFFICES OF CRAIG S. COBB
MEGAN J. FRANTZ OLDHAM                   55 Public Square, Suite 1580
LAUREN GRIBBLE                           Cleveland, OH 44113
220 Market Ave. South, 8th Floor         Attorney for Defendant-Appellee
Canton, OH 44702                         Farmers Insurance of Columbus, Inc.

                                         JUSTIN A. DUBLIKAR
                                         50 South Main St., Suite 615
                                         Akron, OH 44308
                                         Attorney for Defendant-Appellee
                                         The Cincinnati Insurance Company

*Delaney, J.*

{¶1}   Plaintiff-appellant Christopher E. Steinborn ("Steinborn") appeals from the Judgment Entry of the Canton Municipal Court dated July 24, 2018, granting summary judgment on behalf of defendant-appellees Farmers Insurance of Columbus, Inc. ("Farmers") and The Cincinnati Insurance Company ("CIC").

## FACTS AND PROCEDURAL HISTORY

{¶2}   The following facts are adduced from the parties' motions for summary judgment and Civ.R. 56 evidence.

{¶3}   Steinborn was involved in a car accident on September 25, 2015, in which he was not at fault.  CIC is the tortfeasor's auto insurance company and Farmers is Steinborn's auto insurance company.  Steinborn has health insurance through Anthem Blue Cross Blue Shield ("Anthem").

{¶4}   Steinborn's policy with Farmers was in effect from May 4, 2015 until November 4, 2015 and included medical coverage in the amount of $5,000.  Part V, Section 5 of the policy, entitled "Our Rights to Recover Payment," states:

> In the event of any payment under this policy, we are entitled, except where prohibited by law, to all the rights of recovery of the person to whom payment was made against another.  That person must sign and deliver to us any legal papers relating to that recovery, do whatever else is necessary to help us exercise those rights and do nothing after loss to prejudice those rights.
>
> When a person has been paid **damages** by us under this policy and also recovers from another, the amount recovered from

the other shall be held by that person in trust for us and reimbursed to us to the extent of our payment. [Emphasis in original.]

{¶5} "Damages" is defined by the policy as "the cost of compensating those who suffer bodily injury or property damage from an accident."

{¶6} Endorsement J6488 "Coverage E--Medical Expense Coverage" states:

Our Right to Recover Payment.

When a person has been paid **damages** by us under this policy and also recovers from another, the amount recovered from the other will be held by that person in trust for us and reimbursed to us to the extent of our payment. [Emphasis in original.]

This condition does not apply if prohibited by state law.

{¶7} Steinborn was injured in the collision and treated at, e.g., Akron General Medical Center. Akron General billed Steinborn in the amount of $5,803.89, the total amount charged for his treatment there.

{¶8} The invoice was also sent to Anthem and to Farmers.

{¶9} On September 26, 2015, Steinborn signed an admittance form stating, e.g.:

* * * *.

ASSIGNMENT OF INSURANCE BENEFIT TO HOSPITAL: The Patient * * * hereby assigns to Akron General * * * any and all benefits including major medical that are payable to the Patient * * * for payment of medical care and treatment during this hospitalization. The Patient * * * is responsible for charges not covered by this assignment. * * * *.

\* \* \* \*.

{¶10} The admittance form also included an authorization for release of information to anyone liable for all or part of Akron General's charges.

{¶11} On September 29, 2015, Farmers sent Steinborn a letter requesting that he contact Farmers regarding med pay benefits potentially available.

{¶12} On October 1, 2015, Farmers sent Steinborn a letter enclosing an application for benefits and an authorization for release of medical records.

{¶13} In a document dated October 7, 2015, Steinborn signed a "Summa Health Systems Conditions of Registration/Admission [additional verbage obscured]" stating in pertinent part:

> \* \* \* \*.
>
> **Assignment of Insurance Benefits**.  I hereby authorize payment of benefits otherwise payable to me by the designated insurance company(ies) directly to the above named Hospital (or to the physician for physician services).  [Emphasis in original.]
>
> \* \* \* \*.

{¶14} On October 9, 2016, Steinborn received an Explanation of Benefits from Anthem indicating Akron General submitted the claim to Anthem and Anthem adjusted the charges by $4,218.89.  Akron General's charges allowed by Anthem thus totaled $1,585.00.

{¶15} On October 13, 2015, Akron General mailed an updated invoice to Steinborn reflecting an amount due of $1,585.00.

{¶16} On October 28, 2015, Farmers sent a check in the amount of $5,000 to Akron General. Akron General cashed the check, removed the contractual adjustments issued by Anthem, and issued a third invoice to Steinborn reflecting an amount due of $803.89.

{¶17} On October 29, 2015, Farmers sent Steinborn a notice of the right of subrogation arising from its unauthorized payment to Akron General.

{¶18} On December 3, 2015 Steinborn notified Akron General the payment by Farmers was not authorized and demanded that Akron General 1) return the $5,000 to Farmers and 2) re-submit its invoice to Anthem.

{¶19} Steinborn paid Akron General $803.89.

{¶20} Steinborn settled the claims arising from the car accident for $92,000. The Settlement Agreement stated in pertinent part that Steinborn:

> * * * [A]grees to pay and satisfy all hospital or medical charges of any type incurred by [Steinborn] in relation to the above-stated accident, casualty, or event, and further agrees to indemnify, protect and hold harmless the party or parties hereby released (including the released party or parties' insurers and attorneys), from the assertion of any such claims, charges, or liens against the released party or parties by any third party or entity. * * * *.

{¶21} CIC issued payment in satisfaction of the Settlement Agreement in two checks in the amounts of: 1) $87,000 and 2) $5,000.

{¶22} Steinborn's related attorney fees and costs totaled $31,019.06, which he paid from the settlement proceeds.

{¶23} Farmers asserted a right of reimbursement for the $5,000 payment to Akron General against Steinborn.

{¶24} Steinborn filed suit against Farmers on September 28, 2017 for declaratory judgment to determine the parties' rights and responsibilities under the policy. Steinborn argued Farmers was not entitled to recover $5,000 because: 1.) Farmers improperly paid Akron General without Steinborn's consent; 2.) Farmers' policy language does not entitle it to reimbursement because the $5,000 medical payment was made to Akron General, not to Steinborn as "damages," therefore he is relieved of any repayment obligation; and 3.) Any claim for reimbursement must be reduced pursuant to R.C. 2323.44.

{¶25} On December 15, 2017, Steinborn was notified by CIC that CIC and Farmers entered arbitration for Farmers' claim for reimbursement of the $5,000 med pay; CIC was therefore issuing a stop payment on the second check, issued to Steinborn, in the amount of $5,000; and CIC would re-issue the check directly to Farmers.

{¶26} Steinborn responded contra that CIC must decline to issue payment directly to Farmers and added CIC as a party to the declaratory judgment litigation. Steinborn's claim against CIC stated CIC failed to honor the terms of the Settlement Agreement when it stopped payment on check number 2 and issued payment directly to Farmers. Steinborn sought a declaration that, e.g., the arbitration between Farmers and CIC was not binding and CIC is obligated to issue payment to Steinborn under the terms of the Settlement Agreement.

{¶27} All parties filed motions for summary judgment. On July 24, 2018, the trial court granted the motions of Farmers and CIC and overruled Steinborn's.

{¶28} Steinborn now appeals from the trial court's Judgment Entry of July 24, 2018.

{¶29} Steinborn raises three assignments of error:

**ASSIGNMENTS OF ERROR**

{¶30} "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN APPELLEES' FAVOR AND DENYING SUMMARY JUDGMENT IN STEINBORN'S FAVOR BECAUSE FARMERS DID NOT ISSUE THE MED PAY TO STEINBORN AS DAMAGES AS REQUIRED UNDER THE TERMS OF THE POLICY IN ORDER FOR FARMERS TO CLAIM REIMBURSEMENT."

{¶31} "II.  THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN APPELLEES' FAVOR AND DENYING SUMMARY JUDGMENT IN STEINBORN'S FAVOR BECAUSE FARMERS' UNILATERAL DECISION TO ISSUE THE ENTIRETY OF STEINBORN'S MED PAY TO AKRON GENERAL, WITHOUT STEINBORN'S KNOWLEDGE OR APPROVAL, HARMED ITS INSURED, STEINBORN, AND VIOLATED FARMERS' FIDUCIARY DUTY TO PROCESS CLAIMS IN GOOD FAITH."

{¶32} "III.  THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN APPELLEES' FAVOR AND DENYING SUMMARY JUDGMENT IN STEINBORN'S FAVOR UNDER OHIO'S PRO RATA SUBROGATION STATUTE, R.C. 2323.44, BECAUSE, ALTHOUGH THE TRIAL COURT CONCLUDED THAT STEINBORN DID NOT ACTUALLY RECOVER THE FULL VALUE OF HIS TORT CLAIM DUE TO HIS PAYMENT OF ATTORNEY FEES FROM THE SETTLEMENT PROCEEDS, IT NEVERTHELESS HELD THAT FARMERS' CLAIM FOR REIMBURSEMENT WAS NOT

SUBJECT TO PRO RATA SUBROGATION BECAUSE FARMERS ENGAGED IN ARBITRATION WITH CINCINNATI."

**ANALYSIS**

**I., II., III.**

{¶33} Steinborn argues the trial court erred in granting the motions for summary judgment of Farmers and CIC. We disagree. Steinborn's three assignments of error are related and will be considered together.

*Standard of Review*

{¶34} We review cases involving a grant of summary judgment using a de novo standard of review. *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, ¶ 24. Summary judgment is appropriately granted when "'(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.'" *Esber Beverage Co. v. Labatt USA Operating Co.*, 138 Ohio St.3d 71, 2013-Ohio-4544, 3 N.E.3d 1173, ¶ 9, citing *M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12, internal citation omitted; Civ.R. 56(C).

{¶35} A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 433, 424 N.E.2d

311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning–Ferris Inds. of Ohio, Inc.*, 15 Ohio St.3d 321, 323, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist. 1999).

{¶36} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Wentling v. David Motor Coach Ltd.*, 5th Dist. Stark No. 2017CA00190, 2018-Ohio-1618, 111 N.E.3d 610, ¶ 23, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Downtown Enterprises Co. v. Mullet*, 5th Dist. Holmes No. 17CA016, 2018-Ohio-3228, ¶ 50, citing *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988).

*"Damages" in this case includes payment of medical bills*

{¶37} We begin with the absence of a factual dispute. Steinborn executed a patient assignment authorizing Akron General to bill his insurers for treatment provided.

Akron General billed Farmers and Farmers issued payment.[1] Farmers was required to make timely payment pursuant to R.C. 3901.381, which states in pertinent part:

> (A) * * * [A] third-party payer shall process a claim for payment for health care services rendered by a provider to a beneficiary in accordance with this section.

> (B)(1) Unless division (B)(2) or (3) of this section applies, when a third-party payer receives from a provider or beneficiary a claim on the standard claim form prescribed in rules adopted by the superintendent of insurance under section 3902.22 of the Revised Code, the third-party payer shall pay or deny the claim not later than thirty days after receipt of the claim. * * * *.

{¶38} Steinborn argues that he is not required to reimburse Farmers based upon the language of his policy, supra, which defines "damages" as "the cost of those who suffer bodily injury or property damage from an accident." Farmers' right of reimbursement arises "[w]hen a person has been paid damages by us under this policy and also recovers from another * * *" and "[w]hen a person has been paid damages by us under this policy and also recovers from another * * *." Steinborn argues Farmers paid Akron General directly, not him, therefore the right of reimbursement did not arise. Underlying this argument is the premise that payment of Steinborn's Akron General bill does not constitute payment of "damages" as defined in the policy.

---

[1] Steinborn asserts that at the time, he believed the Akron General paperwork referred to his health insurance (Anthem) only, but the exhibits, as cited supra, are unequivocal.

{¶39} We find this premise unavailing. The construction of an insurance contract is a matter of law to be determined by the court. *Erie Ins. Exchange v. Bullock*, 5th Dist. No. 2015CA00112, 2015-Ohio-5406, 55 N.E.3d 460, ¶ 24, citing *Chicago Title Ins. Co. v. Huntington Nat'l Bank,* 87 Ohio St.3d 270, 719 N.E.2d 955 (1999). In interpreting the contract, a court is to give effect to the intent of the parties to the agreement. *Id.*, citing *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256. In doing so, "[w]e examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. We look to the plain and ordinary meaning of language used in the policy unless another meaning is clearly apparent from the contents of the policy. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Id.* The general rule of liberal construction cannot be employed to create an ambiguity where there is none. *Progressive Max Ins. Co. v. Grange Mut. Cas. Co.,* 8th Dist. Cuyahoga No. 81656, 2003-Ohio-4564, 2003 WL 22019604. "Only where a contract of insurance is ambiguous and, therefore, reasonably susceptible to more than one meaning must the policy language be construed liberally in favor of the insured who drafts the instrument." *Id.*

{¶40} In the instant case, we may not create an ambiguity where there is none. Farmers' right of reimbursement arises from its payment of "the cost of compensating those who suffer bodily injury * * * from an accident," which expressly describes the Akron General invoice paid by Farmers. There is no dispute the bill was submitted to CIC and included as part of Steinborn's settlement. Steinborn has not directed us to any authority in support of his premise that hospital and medical expenses do not constitute "damages." Farmers, on the other hand, notes the general principle that compensatory damages

encompass direct pecuniary loss, "such as hospital and other medical expenses * * *."

*Fantozzi v. Sandusky Cement Prod. Co.*, 64 Ohio St.3d 601, 612, 597 N.E.2d 474 (1992),

citing 4 Restatement of the Law 2d, Torts (1965), Section 903 *et seq.* See also, R.C.

2315.18(A)(2)(b) [recovery of damages represents economic losses and noneconomic

losses, and "economic loss" means "any of the following types of pecuniary harm: * * * *

[a]ll expenditures for medical care or treatment * * * as a result of an injury or loss to

person or property that is a subject of a tort action."]

*Farmers was permitted to pay Akron General directly*

{¶41} Steinborn further argues Farmers' right of reimbursement did not arise

because Farmers "unilaterally decide[d]" to pay Akron General instead of him. Again,

though, we fail to find any ambiguity in the language of the assignment Steinborn signed

authorizing payment directly to Akron General. Nor do we find any condition precedent

in the Policy requiring the insured to make application or consent to payment to a provider.

Steinborn has not directed us to any evidence in the record supporting his assertion that

this assignment was invalid or Farmers was somehow prohibited from paying Akron

General directly. Instead, Steinborn points only to an alleged ambiguity in the policy's

definition of "damages" which we fail to perceive. The language "a person has been paid

damages *by us*" does not alleviate Steinborn's responsibility to reimburse Farmers under

the circumstances of the instant case. To find otherwise would create an unnecessary,

distorted ambiguity and circumvent the purpose of the policy's right of reimbursement.

{¶42} Conversely, Steinborn asserts Farmers violated a fiduciary duty to act in

good faith when it paid Akron General directly, although Steinborn admits the policy itself

"is silent" as to this matter. Steinborn thereby infers Farmers should have obtained his

approval to pay Akron General, determined whether other (health) insurance was available, and determined his preferred priority of payment.

{¶43} Farmers responds that the policy requires nothing of the kind, and moreover, Farmers had Steinborn's patient assignment from the hospital E.R. assigning his rights to med pay to Akron General. We find no support in the Policy for Steinborn's assertion that he was required to "approve" payment to Akron General.

*Evidence does not establish Steinborn settled for less than full value*

{¶44} Finally, in his third assignment of error, Steinborn argues the trial court should not have granted summary judgment against him, and should have granted summary judgment in his favor, because his recovery was diminished due to payment of attorney fees, therefore Farmers' recovery should be diminished by the same percentage pursuant to R.C. 2323.44(B), which states:

> Notwithstanding any contract or statutory provision to the contrary, the rights of a subrogee or any other person or entity that asserts a contractual, statutory, or common law subrogation claim against a third party or an injured party in a tort action shall be subject to both of the following:

> (1) If less than the full value of the tort action is recovered for comparative negligence, diminishment due to a party's liability under sections 2307.22 to 2307.28 of the Revised Code, or by reason of the collectability of the full value of the claim for injury, death, or loss to person resulting from limited liability insurance or any other cause,

the subrogee's or other person's or entity's claim shall be diminished in the same proportion as the injured party's interest is diminished.

(2) If a dispute regarding the distribution of the recovery in the tort action arises, either party may file an action under Chapter 2721. of the Revised Code to resolve the issue of the distribution of the recovery.

{¶45} Steinborn argues the trial court made an implicit finding that his recovery was reduced due to the attorney fees and yet wrongfully concluded the statute did not require pro rata subrogation. We note, however, that the trial court found:

* * * *. While the parties make arguments regarding the application of [R.C.] 2323.44 to the facts of this case, its application or non-application does not alter the fact that [Steinborn] accepted payment in full from [CIC] with the inclusion of the $5,000. [Steinborn] has not presented any evidence that his knowing and voluntary settlement was anything other than for full value. * * * *.

Judgment Entry, 3.

{¶46} Upon our de novo review of the Civ.R. 56 evidence, we find no evidence that Steinborn's settlement represents an amount less than the total value of his claim. See, *Palmer v. Grange Mut. Cas. Co.*, 11th Dist. Trumbull No. 2008-T-0124, 2009-Ohio-3939, ¶ 38 [insured failed to introduce any evidence into record demonstrating he was not fully compensated].

{¶47} Steinborn's deposition testimony reveals he understood the settlement amount of $92,000 was full and final; the sum covered his injury claim, pain and suffering,

medical expenses and lost income, attorney fees, and future medical expenses; and he was aware at the time of settlement that Farmers claimed it was owed $5,000 from the settlement. (T. Steinborn, 22-24).[2] The deposition of the CIC field claims supervisor established that there was no diminishment in the settlement amount due to comparative negligence, pre-existing medical history, or question of liability; Steinborn's medical expenses were deemed reasonable and necessary; the $92,000 took into consideration the $5,000 that Farmers paid for medical payments; and the settlement amount was not discounted for any reason. (T. May, 6-12, 19).

*CIC obligated to pay Farmers' arbitration award & properly did so*

{¶48} The trial court also granted CIC's motion for summary judgment. Steinborn has not raised an assignment of error regarding the findings as to CIC. We note that based upon our review of the Civ.R. 45 evidence, we concur that Steinborn's claims against CIC are not well-taken. CIC was notified of Farmers' subrogation claim on October 29, 2015. On the same date, Steinborn was advised in writing that Farmers directly paid Akron General $5,000. CIC and Steinborn were aware throughout the evaluation of Steinborn's claim that Farmers' $5,000 med pay subrogation claim would factor into any settlement.

{¶49} Steinborn settled his claim with CIC on July 20, 2017, for $92,000, an amount CIC agreed to with the express condition that Steinborn would repay and satisfy Farmers' subrogation claim out of the settlement proceeds, as evidenced by the Release agreed to and executed by Steinborn. Steinborn further agreed to the issuance of two

---

[2] We note Steinborn testified he settled the case not because of any duress but because he was "tired of dealing with it" and wanted the case to be resolved. (T. Steinborn, 23).

separate checks by CIC: the first in the amount of $5,000, specifically intended to satisfy Farmers' lien, and the second in the amount of $87,000 to Steinborn for the net amount of the settlement.

{¶50} Steinborn then indicated to Farmers, however, that he would not reimburse the med pay lien. Farmers initiated arbitration against CIC and was awarded $5,000 against CIC. CIC then stopped payment on the first check issued to Steinborn in the amount of $5,000 and instead issued a new check to Farmers, mailed directly to Farmers. We agree with the trial court that on these facts, Steinborn left CIC with the options of breaching its obligation to its insured, or breaching the release agreement with Steinborn, when in fact Steinborn had not complied with the release agreement. We find Steinborn's claims against CIC not well-taken.

{¶51} Upon our de novo review, we conclude the trial court properly granted summary judgment in favor of Farmers and CIC, and denied Steinborn's motion for summary judgment, because no genuine issues of any material fact remain to be litigated; Farmers and CIC are entitled to judgment as a matter of law; and it appears from the evidence that reasonable minds can come to but one conclusion. Viewing the evidence most strongly in favor Steinborn, our conclusion is adverse to Steinborn, and his three assignments of error are overruled.

**CONCLUSION**

{¶52} Steinborn's three assignments of error are overruled and the judgment of the Canton Municipal Court is affirmed.

By:  Delaney, J.,

Gwin, P.J. and

Baldwin, J., concur.