[Cite as *Travelers Property Cas. Co. of Am. v. Cincinnati Ins. Co.*, 2019-Ohio-2547.]

TCOURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| TRAVELERS PROPERTY CASAULTY COMPANY OF AMERICA | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 18-COA-027 |
| | : | |
| CINCINNATI INSURANCE COMPANY | : | |
| | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:            Appeal from the Ashland County Court
                                     of Common Pleas, Case No. 17-CIV-
                                     154


JUDGMENT:                            AFFIRMED


DATE OF JUDGMENT ENTRY:             June 21, 2019


APPEARANCES:

For Plaintiff-Appellant:              For Defendant-Appellee:

GARY L. NICHOLSON                     LOUIS M. DEMARCO
RICHARD C.O. REZIE                    JAMES J. REAGAN
6th Floor, Bulkley Building           50 S. Main St.
1501 Euclid Ave.                      Akron, OH 44308
Cleveland, OH 44115

*Delaney, J.*

{¶1} Plaintiff-Appellant Travelers Property Casualty Company of America appeals the June 20, 2018 judgment entry of the Ashland County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

### *Lopeman v. Stewart*

{¶2} On January 26, 2017, Joylynn M. Lopeman filed a complaint in the Ashland County Court of Common Pleas against Glen P. Stewart, both individually and in his official capacity as the Mayor of the City of Ashland, based on an accident that occurred on December 2, 2015. Lopeman alleged that on December 2, 2015, Stewart was driving his 2007 Chevy Colorado eastbound on Samaritan Avenue. Lopeman was walking on College Boulevard. Stewart turned onto College Boulevard and hit Lopeman, causing her bodily injuries. Lopeman brought multiple causes of actions, one being respondeat superior. Lopeman alleged that at the time of the accident, Stewart was working within the scope of his employment as Mayor; therefore, the City of Ashland was responsible for his negligence.

{¶3} At the time of the accident, Stewart was the named insured on an automobile liability insurance policy issued by Defendant-Appellee Cincinnati Insurance Company. The Cincinnati policy was purchased by Steward and covered Stewart's 2007 Chevy Colorado. Also at the time of the accident, Plaintiff-Appellant Travelers Property Casualty Company of America issued an automobile liability insurance policy to the City of Ashland. Cincinnati communicated with Travelers and stated that Cincinnati and Travelers should defend and indemnify Stewart on a pro rata basis. Travelers responded

that pursuant to the terms of its policy, it provided only excess liability insurance for nonowned vehicles and Cincinnati provided primary liability coverage.

{¶4} Stewart filed a third-party complaint against the City of Ashland demanding that the City provide a full defense and indemnification.

{¶5} On March 24, 2017, the parties filed a Joint Stipulation of Dismissal pursuant to Civ.R. 41(A)(1)(b). It stated:

> Now come the parties and pursuant to Civ.R. 41(A)(1)(b) hereby stipulate to the dismissal of Defendant Glen P. Stewart, Individually. For the purpose of this litigation, the parties stipulate that Mr. Stewart was acting in the course and scope of his employment, as the Mayor of the City of Ashland, at the time of the motor vehicle accident which is the subject of Plaintiff's Complaint.
>
> This case will remain pending against Defendant Glen P. Stewart, Mayor of the City of Ashland, as an official capacity claim against the City of Ashland, as well as the other named Defendants.

The Joint Dismissal was signed by counsel for Plaintiff Lopeman; counsel for Defendants City of Ashland and Stewart, as Mayor; counsel for Defendant State Farm; and counsel for Defendants/Third Party Plaintiffs Stewart, individually, and Stewart, as Mayor.

### Travelers v. Cincinnati

{¶6} On August 21, 2017, Travelers filed a declaratory judgment action against Cincinnati in the Ashland County Court of Common Pleas. Travelers requested the trial court issue a declaratory judgment finding that Cincinnati's automobile liability insurance provided primary coverage and Travelers' automobile liability policy provided excess

coverage. Travelers contended Cincinnati had a duty to settle or defend until its limit of insurance coverage was tendered for settlement. Travelers argued the matter should be resolved by the Ohio Supreme Court decision in *Motorists Mutual Ins. Co. v. Lumbermens Mut. Ins. Co.*, 1 Ohio St.2d 105, 205 N.E.2d 67 (1965). Cincinnati argued that pursuant to the terms of its automobile liability policy, Travelers was responsible for primary liability coverage and Cincinnati was responsible for excess liability coverage.

{¶7} The matter was scheduled for a bench trial before the magistrate. In preparation for the bench trial, the parties filed joint stipulated facts and exhibits. The parties also submitted bench briefs in support of their positions.

*Travelers Automobile Liability Policy*

{¶8} Travelers argued that pursuant to the terms of its automobile liability policy, it provided coverage excess over Cincinnati's primary liability coverage. In support of its argument, it submitted the automobile liability insurance policy issued to the City of Ashland, effective from August 30, 2015 to August 30, 2016. The named insured on the policy was, "City of Ashland." Travelers did not dispute that pursuant to the terms of its Business Auto Coverage, the Mayor's Chevy Colorado was a "covered auto."

{¶9} The Business Auto Coverage Part Declarations explained the Coverage and Limits of Insurance:

**Section II – Covered Autos Liability Coverage**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of

a "bodily injury" or "property damage" to which this insurance applies,

caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

* * *

**1. Who Is An Insured**

The following are "insureds":

a. You for any covered "auto".

* * *

{¶10} The automobile liability policy included a Public Entity Auto Extension Endorsement. It added the following definition to "**A.1., Who Is An Insured**," of "**SECTION II – COVERED AUTOS LIABILITY COVERAGE**,"

Any of your lawfully elected or appointed officials, directors or executive officers or any member of your boards is an "insured" while using a covered "auto" in the course of his or her duties for you at the time of an "accident."

{¶11} Most relevant to the declaratory judgment action, the Travelers automobile liability policy included conditions for coverage. Travelers argued that "Section IV – Business Auto Conditions" limited its coverage for the December 2, 2015 accident. The Business Auto Conditions stated:

**SECTION IV – BUSINESS AUTO CONDITIONS**

* * *

**5. Other Insurance**

a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.

\* \* \*

c. Regardless of the provisions of Paragraph a. above, this Coverage Forms' Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

\* \* \*

{¶12} The Travelers policy defines "insured contract," in relevant part, as:

\* \* \*

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

\* \* \*

### *Cincinnati Automobile Liability Policy*

{¶13} Cincinnati argued that pursuant to the terms of its automobile liability policy, Travelers was responsible for primary liability coverage and Cincinnati was responsible for excess liability coverage. In support of its argument, it referred to the Cincinnati automobile liability insurance policy issued to Stewart, effective from November 27, 2015 to November 27, 2016. The named insureds on the Cincinnati policy were "Glen Stewart" and "Julia Stewart." The Auto Declaration form listed the 2007 Chevrolet Colorado as a "covered auto" and Stewart was a "covered driver." "Your covered auto" was defined as, "any vehicle shown in the Declarations, \* \* \*."

{¶14} The automobile liability policy states it will provide coverage as follows:

**PART A – LIABILITY COVERAGE**

**INSURING AGREEMENT**

When a "covered person" becomes legally responsible because of an auto accident or for physical damage to a "nonowned auto", "we" will pay for:

A. "Bodily injury";

B. "Property damage";

C. "Property damage" to a "nonowned auto":

* * *

"Covered person" as used in this policy means:

1. "You" or "any family member" for the ownership, maintenance or use of any auto * * *.

* * *

3. Any person using "your covered auto".

4. For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

* * *

**OTHER INSURANCE**

If there is other applicable liability insurance "we" will pay only "our" share of the loss. "Our" share is the proportion that "our" limit of insurance bears to the total of all applicable limits. However, any insurance "we" provide for a vehicle "you" do not own, including any vehicle while used as a temporary

substitute for "your covered auto", or a vehicle operated or used by any person other than "you" or any "family member" shall be excess over any other collectible insurance.

### Magistrate's Decision

{¶15} The magistrate issued his decision on April 5, 2018. The issue before the magistrate was which insurance company served as the primary insurer for the December 2, 2015 accident. The magistrate considered the terms of the Travelers and Cincinnati automobile liability policies and found both Travelers and Cincinnati had the responsibility of providing primary liability coverage for the December 2, 2015 accident. Travelers and Cincinnati were liable for the proportion that their limits of insurance related to the total of all applicable limits.

{¶16} The magistrate first found Travelers was the primary insurer of the December 2, 2015 accident. The magistrate examined the "Other Insurance" clause of the Travelers policy. The "Other Insurance" clause provided that for any covered auto the City of Ashland did not own, Travelers insurance would be excess over any other collectible insurance. Stewart's Chevy Colorado was a covered auto under the Travelers policy, but the City of Ashland did not own the vehicle. The "Other Insurance" clause went on to state, however, that Travelers' coverage would be primary for any liability assumed under an "insured contract." The magistrate considered the Joint Stipulation of Dismissal and found that it was an "insured contract" as defined by the Travelers policy because it was an agreement between the City of Ashland and Stewart that pertained to the municipality and under which the City of Ashland assumed the tort liability of Stewart, in his capacity as Mayor to pay for the bodily harm or property damage to Lopeman. In

making his decision, the magistrate referred to R.C. 2744 and the City of Ashland's liability for the actions of Stewart, who was acting within his scope of employment as the Mayor of the City of Ashland at the time of the accident. The Joint Stipulation to Dismissal agreed to dismiss Stewart, in his individual capacity, from the tort action.

{¶17} The magistrate next found the language of the Cincinnati policy required that it must share any potential liability on a pro rata basis pursuant to the terms of its "Other Insurance" clause.

{¶18} Travelers filed objections to the Magistrate's Decision. Travelers' objections centered on the Magistrate's Decision that the Joint Stipulation of Dismissal was an "insured contract" under the terms of the Travelers' automobile liability policy, so that the Travelers policy provided primary liability coverage for the December 2, 2015 accident. Cincinnati responded to the objections in support of the Magistrate's Decision.

### Trial Court Judgment

{¶19} The trial court considered Travelers' objections and issued its judgment entry on June 20, 2018, overruling the objections and adopting the Magistrate's Decision. The trial court found Travelers was responsible for providing primary coverage because the Joint Stipulation of Dismissal was an "insured contract" as defined by the Travelers automobile liability policy.

{¶20} It is from this judgment Travelers now appeals.

### ASSIGNMENT OF ERROR

{¶21} Travelers raises one Assignment of Error:

{¶22} "THE TRIAL COURT ERRED IN DECLARING THAT THE CITY OF ASHLAND'S INSURER, PLAINTIFF-APPELLANT TRAVELERS [PROPERTY

CASUALTY] COMPANY OF AMERICA ('TRAVELERS'), BEARS THE RESPONSIBILITY OF PROVIDING PRIMARY LIABILITY INSURANCE FOR AN ACCIDENT CAUSED BY THE MAYOR'S ALLEGED NEGLIGENT OPERATION OF AN AUTO HE OWNED (THE 'ACCIDENT'); AND THAT TRAVELERS AND THE MAYOR'S INSURER, DEFENDANT-APPELLEE CINCINNATI INSURANCE COMPANY ('CIC'), ARE LIABLE FOR ANY SETTLEMENT OR JUDGMENT IN A BODILY INJURY SUIT AGAINST THE MAYOR ARISING OUT OF THE ACCIDENT (THE 'UNDERLYING SUIT') IN THE PROPORTION THAT TRAVELERS' AND CIC'S LIMITS OF INSURANCE BEARS TO THE TOTAL OF THEIR APPLICABLE LIMITS."

## ANALYSIS

{¶23} Travelers contends in its sole Assignment of Error that the trial court erred when it found Travelers automobile liability policy provided primary coverage for the accident on December 2, 2015. We disagree.

### *General Insurance Contract Principles*

{¶24} An insurance policy is a contract between the insurer and the insured. *G & K Mgt. Servs., Inc. v. Owners Ins. Co.*, 2014-Ohio-5497, 24 N.E.3d 1230 (5th Dist.), ¶ 19 citing *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 112 Ohio St.3d 482, 2006-Ohio-6551, 861 N.E.2d 121, ¶ 23. Whether a claim is covered under the terms of the insurance policy, it is a question of law for the court to decide. Generally, courts interpret insurance policies in accordance with the same rules applied in interpreting other types of contracts. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665, 597 N.E.2d 1096 (1992).

{¶25} In interpreting the contract, a court is to give effect to the intent of the parties to the agreement. *Steinborn v. Farmers Ins. of Columbus, Inc.*, 5th Dist. Stark No. 2018CA00128, 2019-Ohio-1745, 2019 WL 2027216, ¶ 39 citing *Erie Ins. Exchange v. Bullock*, 2015-Ohio-5406, 55 N.E.3d 460 (5th Dist.), ¶ 24, citing *Chicago Title Ins. Co. v. Huntington Nat'l Bank,* 87 Ohio St.3d 270, 719 N.E.2d 955 (1999), citing *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256. In doing so, "[w]e examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. We look to the plain and ordinary meaning of language used in the policy unless another meaning is clearly apparent from the contents of the policy. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Id*. The general rule of liberal construction cannot be employed to create an ambiguity where there is none. *Progressive Max Ins. Co. v. Grange Mut. Cas. Co.*, 8th Dist. Cuyahoga No. 81656, 2003-Ohio-4564, 2003 WL 22019604, ¶ 16. "Only where a contract of insurance is ambiguous and, therefore, reasonably susceptible to more than one meaning must the policy language be construed liberally in favor of the insured who seeks coverage and strictly against the insurer who drafts the instrument." *Id* at ¶ 17.

## Motorists *Does Not Apply*

{¶26} Travelers' primary argument throughout these proceedings is that the Ohio Supreme Court case of *Motorists Mutual Ins. v. Lumbermens Mutual Ins. Co.*, 1 Ohio St.2d 105, 205 N.E.2d 67 (1965), is determinative of the issue whether the Travelers automobile liability policy provides primary or excess coverage for the December 2, 2015 accident. In *Motorists*, the automobile insurer of the driver of an automobile, who injured

a third person, brought a declaratory judgment action against the automobile insurer of the owner of the vehicle. The insurers admitted that under the standard clauses of each automobile liability policies, both policies covered the claim of the injured person. *Id.* at 105-106. The question before the Court was whether the coverage of either policy was as to excess only or whether it was the duty of the two insurers involved to prorate any loss to which the driver was liable. *Id.* at 106.

{¶27} The driver's automobile liability policy stated the "insurance afforded by the policy with respect to 'any other automobile' when driven by the named insured 'shall be excess insurance over any other valid and collectible insurance available to the insured or owner of such other automobile.' " *Id.* at 106. The owner's automobile liability policy stated, with respect to an "owned automobile," "a person driving with the permission of the named insured is an 'insured,' and the other insurance available to the insured with respect to a nonowned automobile shall be excess over any other valid and collectible insurances." *Id.* at 106. The Court found the automobile driven at the time of the accident was not a "nonowned" vehicle per the terms of the owner's automobile liability policy, so the excess provision of the owner's policy did not apply. *Id.* at 106. The Court found therefore the excess provision of the driver's policy applied. *Id.* at 106.

{¶28} The Court next compared the "excess provision" of the driver's policy to the "pro rata provision" of the owner's policy. *Id.* at 106. It found the owner's policy was primary and the driver's policy was excess, relying on the theory of automobile liability that the "insurance follows the car." *Id.* at 106-107. The Court resolved:

> Where one insurer insures against a loss and provides that it shall not be
>
> liable for a greater proportion of the loss than the applicable limit of liability

stated in its declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss, and another insurer insures against the same loss and additionally provides that such insurance shall be excess insurance over any other valid and collectible insurance available to its insured, effect should be given to the latter provision, and the first insurer should be held to be the primary insurer.

*Id.* at syllabus.

{¶29} Travelers contends the language in the Travelers automobile liability policy and the Cincinnati automobile liability policy is identical to the language of the automobile liability policies discussed in the *Motorists* case; therefore, the Travelers policy is excess and the Cincinnati policy is primary. It argues the trial court erred in its failure to apply the *Motorists* case and enter judgment in favor of Travelers. We do not disagree that the language of the "Other Insurance" clauses found in the Travelers and Cincinnati policies are similar to the policies discussed in *Motorists*. The *Motorists* case, however, is not dispositive because we must consider additional policy language and factual circumstances and they preclude the application of the *Motorists* case to resolve this matter.

### *Joint Stipulation of Dismissal is an "Insured Contract"*

{¶30} The "Other Insurance" clause found in the Travelers automobile liability policy, unlike the clause found in the *Motorists* driver's automobile liability policy, includes an additional provision for the court's consideration. The Travelers "Other Insurance" clause states as follows:

a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.

* * *

c. Regardless of the provisions of Paragraph a. above, this Coverage Forms' Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

The "insured contract" language is an exception to the exclusion of primary coverage under the "Other Insurance" clause. It applies to restore primary coverage if the insured, the City of Ashland, enters into a contract as defined by the Travelers policy. The Travelers policy defines, in pertinent part, that an "insured contract" is:

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; * * *

{¶31} In support of its argument that the Travelers policy provides primary coverage for the December 2, 2015 accident, Cincinnati argues the Joint Stipulation of Dismissal is an "insured contract" under the terms of the Travelers policy. The Joint Stipulation of Dismissal was entered into on March 24, 2017, after Stewart filed a third-party complaint against the City of Ashland demanding the City provide a full defense and fully indemnify him. The Joint Stipulation dismissed Stewart in his individual capacity from

the *Lopeman v. Stewart* action and proceeded against Stewart, Mayor of the City of Ashland, as an official capacity claim against the City of Ashland. The parties agreed Stewart was acting in the course and scope of employment at the time of the accident. The Joint Stipulation of Dismissal was signed by counsel for Plaintiff Lopeman; counsel for Defendants City of Ashland and Stewart, as Mayor; counsel for Defendant State Farm; and counsel for Defendants/Third Party Plaintiffs Stewart, individually, and Stewart, as Mayor.

{¶32} The trial court found the Joint Stipulation of Dismissal was an "insured contract" as defined by the Travelers policy between the City of Ashland and Stewart, obviating the application of *Motorists* to resolve the matter. Upon our review of the record, we agree the Joint Stipulation of Dismissal was an "insured contract" and therefore the Travelers policy provided primary coverage.

{¶33} First, the Joint Stipulation pertains to the business of the City of Ashland under which it assumes the tort liability of Stewart, as Mayor of the City of Ashland, to pay for "bodily injury" or "property damage" incurred by Lopeman. Travelers contends the subject matter of the Joint Stipulation is litigation and litigation is not part of its "business" as a municipality. The parties do not dispute that Stewart was acting within the scope of his employment and official responsibilities as Mayor of the City of Ashland at the time of the accident. The subject matter of the Joint Stipulation is two-fold: (1) it is an agreement that Stewart was acting in his official capacity at the time of the accident and (2) it is an agreement that Lopeman's claim was to proceed as an official capacity claim against the City of Ashland. The actions of the Mayor of the City of Ashland done within the scope of

his employment and the legal ramifications thereof to the City of Ashland pertain to the "business" of the City of Ashland.

{¶34} Second, the Travelers policy defines "tort liability" as "a liability that would be imposed by law in the absence of any contract or agreement." In finding there was an "insured contract," the trial court considered the City's statutory liability for Stewart's acts under Ohio Revised Code Chapter 2744, Political Subdivision Tort Liability. R.C. 2744.07(A)(1) states:

> Except as otherwise provided in division (A)(2) of this section, a political subdivision shall provide for the defense of an employee, in any state or federal court, in any civil action or proceeding which contains an allegation for damages for injury, death, or loss to person or property caused by an act or omission of the employee in connection with a governmental or proprietary function. Amounts expended by a political subdivision in the defense of its employees shall be from funds appropriated for this purpose or from proceeds of insurance.

{¶35} R.C. 2744.07(B)(2) states:

> Except as otherwise provided in division (B)(2) of this section, a political subdivision shall indemnify and hold harmless an employee in the amount of any judgment, other than a judgment for punitive or exemplary damages, that is obtained against the employee in a state or federal court or as a result of a law of a foreign jurisdiction and that is for damages for injury, death, or loss to person or property caused by an act or omission in connection with a governmental or proprietary function.

{¶36} The City of Ashland is statutorily obligated pursuant to R.C. 2744.07(A)(1) to provide a defense for its employees. *Ohio Govt. Risk Mgt. Plan v. Cty. Risk Sharing Auth.*, 130 Ohio App.3d 174, 184, 719 N.E.2d 992 (6th Dist.1998). R.C. 2744, however, does not create an "insured contract." Travelers cites this Court to *Bankers Standards Ins. Co. v. American States Ins.*, 9th Dist. Wayne No. 95CA0032, 1995 WL 608409 (Oct. 18, 1995), wherein the court held R.C. 2744.07 determines the rights and obligations between a political subdivision and its employees, but it does not necessarily determine the rights and obligations between two insurance companies as contractually created by the language of their issued policies. *Id.* at *2. A determination that the political subdivision must defend its employee pursuant to R.C. 2744.07 does not resolve the question of which insurance company should provide the defense. *Id.* In the present case, that question is answered by the Joint Stipulation of Dismissal. This case differs from that in *Bankers* because there is an intervening element, the Joint Stipulation of Dismissal. The City of Ashland and Stewart signed the Joint Stipulation of Dismissal wherein the City stated it assumed Stewart's tort liability for an accident that occurred during the scope of his employment as Mayor of the City of Ashland.

{¶37} If provisions of an insurance policy are susceptible of more than one interpretation, they "will be construed strictly against the insurer and liberally in favor of the insured." *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 28 (2007) citing *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus. We find no error for the trial court to find the Joint Stipulation of Dismissal was an "insured contract" pursuant to the terms of the Travelers

automobile liability policy, thereby restoring primary coverage to the covered auto the City of Ashland did not own.

{¶38} The sole Assignment of Error of Travelers Property Casualty Company of America is overruled.

**CONCLUSION**

{¶39} The judgment of the Ashland County Court of Common Pleas is affirmed.

By: Delaney, J., and

Baldwin, J., concur.

Hoffman, P.J., dissenting.

*Hoffman, P.J., dissenting*

**{¶40}** I respectfully dissent from the majority opinion. I do so because I do not find the Joint Stipulation of Dismissal does not create an "insured contract" under Paragraph c. of Travelers' "Other Insurance" clause; therefore, *Lumbermens* applies, and Travelers' and CIC's coverage are *pro rata*.

**{¶41}** I agree with the majority R.C. 2744 does not create an "insured contract." The magistrate and the trial court both determined Travelers' "insured contract" definition must be strictly construed against Travelers and liberally construed in favor of CIC. The majority voices its apparent agreement with the magistrate and the trial court by referencing this accepted rule of construction: if provisions of an insurance policy are susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured. (Maj. Op. at ¶37). I find application of this rule of construction inapplicable herein. CIC is not an "insured" under Travelers' policy. Both Travelers and CIC are insurers. Neither policy should be strictly construed against its issuer in this situation.

**{¶42}** I fail to see how a stipulation of dismissal is the functional equivalent of an "insured contract." As alluded to by the magistrate, an insurance contract normally operates prospectively as protection against future incidents, not retroactively after a covered event occurs as is the scenario presented sub judice.[1]


_____

HON. WILLIAM B. HOFFMAN

---

[1] Although not directly raised in the trial court nor specifically argued in Appellants' briefs as impacting the legal effect of the Joint Stipulation of Dismissal, I find the authority of counsel for the plaintiff, the City of Ashland and Glen Steward, Mayor, and CIC as counsel for Glen Stewart, Individually and as Mayor, to unilaterally be able to affect the extent of Travelers' coverage without the input and/or consent of Travelers' troubling. I find nothing in this record to establish any counsel signing the stipulation did so as a representative of Travelers.

CIC represents in its brief Travelers could have chosen not to have accepted the stipulation, but allowed counsel to sign. CIC offers no citation to the record to support this assertion, nor does it specifically identify which counsel it allowed to sign (presumably counsel for the City of Ashland and Stewart in his capacity as Mayor). (Appellee's Brief at Pg. 13). CIC later asserts [Travelers'] counsel was available and signed the stipulation. (Appellee's Brief at Pg. 14). Travelers, on the other hand, specifically denies it agreed to or signed the stipulation. (Appellant's Reply Brief at Pg. 6).

It seems untenable to me to suggest a non-party's contractual insurance obligation can be created and/or extended by an agreement between its insured and another insurance company also providing coverage for the same incident when its consent is neither documented nor otherwise required.